## Commonwealth to the use of Raser *versus* Raser.

1. A guardian's bond can be sued in the common-law courts whenever he has been fixed by a decree of the Orphans' Court as for a breach of it.
2. The Orphans' Court has power, under the 57th sect. of the Act of March 29th 1832 (Orphans' Courts), to compel the settlement of a guardian's account, whether he be in the jurisdiction of the court or not, if he have given security.
3. The Orphans' Court has the power of a court of chancery to reach the consciences of parties, guardians, sureties and every one else having knowledge of the accounts and doings of a guardian.
4. After a settlement, the Orphans' Court can decree against or in favor of a guardian as may be just and necessary, and enforce the decree by sequestration or execution.
5. The Orphans' Court alone has jurisdiction to settle the accounts of guardians as between them and their wards.
6. Commonwealth *v.* Wenrick, 8 Watts 159, remarked on.

October 21st 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county :* Of October and November Term 1869, No. 195.

This was an action of debt brought, March 15th 1866, by the Commonwealth to the use of Martha E. Raser against William R.

[Commonwealth v. Raser.]

Lockwood, Elizabeth K. Raser, Charles C. Boyd and Daniel Vincent. The writ was returned "*nihil*" as to Lockwood and Vincent, and "summoned" as to the other defendants. The suit was on the bond of Lockwood, guardian of Martha E. Raser, a minor child of Thomas Raser, deceased, with the other defendants as his sureties in the penalty of $2000; conditioned that Lockwood, as guardian, should "at least once in every three years, and at any other time when required by the Orphans' Court, render a just and true account of his management of the property and estate of said minor under his care, and deliver up said property agreeably to the order of the said court or the directions of law, and in all respects faithfully perform the duties of·guardian," &c.

At the trial before Johnson, P. J., the plaintiff gave the bond in evidence, and the following receipt:—

" Received, June 30th 1858, of Daniel Vincent and Mrs. E. K. Raser, administrator and· administratrix of the estate of Thomas Raser, deceased, eight thousand dollars, supposed to be the amount due said Raser's heirs from his estate.

"WM. R. LOCKWOOD, Guardian."

Also the inventory of Thomas Raser's estate amounting to $12,359.75; also certificate of the clerk of the Orphans' Court that Lockwood had filed no account prior to March 15th 1866, the commencement of the suit, and none since May 1867; and certifying that he had filed one on the 17th of November 1866. There were six wards. At the trial Martha was about twenty-six years of age. Lockwood moved to Quincy, Illinois, in 1859, and has not been back since.

The court, after receiving the foregoing testimony, ordered a nonsuit. The plaintiff removed the case to the Supreme Court, and assigned the ordering a nonsuit for error.

*G. W. De Camp,* for plaintiff in error.—The bond and its condition are prescribed by Act of March 29th 1832, § 8, Pamph. L. 191, Purd. 278, pl. 37. A suit will lie on it without any proceeding in the Orphans' Court: Commonwealth v. Bryan, 8 S. & R. 128; Commonwealth v. Wenrick, 8 Watts 159; Newcomer's Appeal, 7 Wright 43; Commonwealth v. Rogers, 3 P. F. Smith 470; Hartzell v. Commonwealth, 6 Wright 460.

*J. C. Marshall* (with whom was *F. F. Marshall*), for defendant in error.—Without final action in the Orphans' Court, the Common Pleas has no jurisdiction: Act of 1832, *supra*, Purd. 307, pl. 208, *et seq.*; Shilling's Appeal, 1 Barr 90; Dennison v. Cornwell, 17 S. & R. 374; Bowman v. Executors of Herr, 1 Penna.

[Commonwealth *v.* Raser.]

R. 282; Nutz *v.* Reutter, 1 Watts 229; Carl *v.* Wonder, 5 Id. 97; Hostetter's Appeal, 6 Id. 245.

The opinion of the court was delivered, January 3d 1870, by

THOMPSON, C. J.—The plaintiff, formerly a ward of the defendant Lockwood, brought this action in the court below against him and his sureties, on the bond given by them in the Orphans' Court of Erie county, on his appointment as guardian of the plaintiff; conditioned according to the Act of Assembly, "to render a just and true account of the management of the property and estate of said minor," &c.

No account had, at the time of the bringing the suit, been filed by the guardian, although much more than three years had elapsed since his appointment; nor had there been any move made to that effect by the ward, although she was over age five or six years, when this suit was brought. In 1859 the guardian removed out of the jurisdiction of the court into the state of Illinois, to the town of Quincy.

After the plaintiff had given in evidence the appointment of Lockwood as guardian, his bond executed by defendants as sureties, a receipt by him to the administrators of the estate of Thomas Raser, deceased, for $8000, "supposed," as the receipt says, "to be the amount due said Raser's heirs," and proof that there were six of them, and that the guardian had removed from the state in 1859, she rested. Whereupon, on motion of the defendants' counsel, the court granted a nonsuit against the plaintiffs.

The ground for the nonsuit does not appear, no opinion having been filed; but as the arguments on both sides assume that it was because no settlement of the accounts of the guardian had been made or called for, and no decree of the Orphans' Court fixing any liability on his part, we may accept this as the reason for the nonsuit, and notice it as the only one.

That a guardian's bond is security for all interested in the trust is not to be disputed. Nor is it to be doubted that it is liable to be sued in the common-law courts, whenever the guardian has been ultimately fixed by decree of the Orphans' Court as for a breach of it. The Orphans' Court is vested with ample powers by the 57th section of the Act of 29th March 1832 to compel settlements of guardians' accounts, whether the guardian has removed out of the jurisdiction of the court or not, if he has given security, as he did in this case. It can cite him to a settlement wherever he may be; and if his residence be not known, his sureties may be cited, and on due proof of service of the citation the act provides that the court "may proceed to make such order or decree in respect to the subject-matter as may be just and necessary."

It is not my purpose to analyze the provisions of the law, to

[Commonwealth v. Raser.]

show that the Orphans' Court has ample powers to arrive at an ascertainment of the state of a guardian's accounts and his liability in any case. It is armed with the powers of a court of chancery to reach the consciences of parties, guardians, sureties and everybody else having any knowledge of the accounts or doings of the guardian, and can compel the production of books and papers having relevancy to the matter of the trust, and then, after a settlement according to equity in such cases, it can decree against, or in favor of the guardian, as may be "just and necessary," and enforce its decree by sequestration as well as by common law writs of execution. This power to enforce the decree, at once, not only shows that a complete system was designed for the Orphans' Court in cases of this kind, but it exhibits a care for sureties, who by this means may be, and often are, saved from loss by guardians. I cannot but think, therefore, that the legislature intended that the Orphans' Court *alone* should have jurisdiction to settle the accounts of guardians as between them and their wards, let the object for it be what it may, whether with a view to bring suit against sureties on their bond, or to proceed by decree and sequestration against the guardian himself. I cannot comprehend the machinery of the act, if this be not its purpose, or why the Orphans' Court should be so broadly empowered in cases of citation, to proceed to make such order or decree in respect to the subject-matter of the petition as may be "just and necessary," if it were not so.

If, for a technical breach of the bond, a ward might sue his guardian and bring him into a common law court to establish his accounts, minute and numerous as they usually are, who does not see the uncertainty and wrong which might be done to either side? Even with the advantage of the new rule as to the competency of parties to be witnesses, a common law trial, and settlement of accounts by a jury, would possess little of the satisfactory advantages which an examination by auditors would afford, with the supervision of the court on exceptions, and an eventual right of appeal to the Supreme Court. Certainly, we think the revisers in their Act of 1832 did not mean to provide the machinery and confer the powers they did on the Orphans' Court in cases of guardians, with any other view, than that it was to be the sole tribunal for the settlement of guardians' accounts with their wards. And this is shown by Morris v. Garrison, 3 Casey 226. It is a court of exclusive jurisdiction within its orbit: Ashford v. Ewing, 1 Casey 213; Whiteside v. Whiteside, 8 Harris 474; Shollenberger's Appeal, 9 Id. 341.

I admit it is somewhat difficult to reconcile all the decisions on this point, and especially in regard to suits on administrators' bonds, somewhat analogous in their nature. Indeed, I am not exactly able to reconcile The Commonwealth v. Wenrick, 8

[Commonwealth *v.* Raser.]

Watts 159, cited by the learned counsel for the plaintiff in error, with itself or with other decisions. I am content, therefore, to let it stand untouched on its own bottom—that of a suit against sureties on an administration bond without a citation or any pursuit of the principal. The case goes, however, strongly to prove that the sureties were not fixed until a *devastavit* was first established against the administrator; but that in a case where he absconds, or removes from the state, action will lie at the suit of a creditor or legatee against the sureties in the bond without this.

But in Bowman *v.* Herr, 1 Penna. R. 282, it was decided, that assumpsit would not lie by a ward against her guardian to compel a settlement of his accounts and payment of the balance due her. The views of the court, as expressed by Rogers, J., are in full accord with those given above. It is true the guardian was appointed and gave bond under the Act of 30th March 1821; but the provisions of the bond provided in that act are exactly those provided by the Act of 1832. "Where bonds have been taken in pursuance of the Act of 30th March 1821, the condition of the bond is," says Judge Rogers, "to render a just and true account in the Orphans' Court, and to deliver up the property of the minor, agreeably to the decree or order of the court. The 3d section of the act requires the guardian to settle once in every three years in the same court. These various acts evidently show that the legislature intended to devise a system complete in itself, by the creation of a tribunal with all the power necessary to afford adequate relief. This view of the case, taken in connection with the act, which prescribes, that where a remedy is provided, or a duty enjoined, or anything directed to be done by an Act of Assembly, the directions of the act shall be strictly pursued, induced the opinion that the Orphans' Court *alone* had the power to compel the settlement of a guardian's account. In Denison *v.* Cornwell, 17 S. & R. 378, it was decided that the Orphans' Court was the proper tribunal for the settlement of accounts between guardian and ward." In another part of the opinion, the learned judge illustrates with great force the intolerable hardship which would ensue to a guardian, if by suit or action he might be obliged to settle his accounts in a common law jurisdiction. We regard the doctrine of this case much in point, as it is an adjudication on the provisions of the Act of 1821, which, to a great extent, became incorporated into the Act of 1832. Entertaining these views, we must affirm the judgment of the court below in ordering the nonsuit in this case.

Judgment affirmed.